Filed 2/23/24  P. v. Hill CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B322171 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA155815) |
| v. | |
| JOSEPH TIMOTHY HILL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Connie R. Quinones and Teresa P. Magno, Judges.  Affirmed in part, reversed in part, and remanded with directions.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt C. Bloomfield and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

Joseph Timothy Hill appeals the judgment entered following a jury trial in which he was convicted as charged of one count of first degree murder in violation of Penal Code[1] section 187, subdivision (a) (count 1) and one count of possession of a firearm by a felon in violation of section 29800, subdivision (a)(1) (count 2).  The jury further found true the allegation that appellant personally used a firearm in the commission of the murder.  (§ 12022.5, subd. (a).)  Appellant waived his right to a jury trial on the prior conviction allegation, and in a bifurcated proceeding, the trial court found that appellant had suffered a prior conviction for active participation in a gang (§ 186.22, subd. (a)), which qualified as a "strike" under the Three Strikes law. (§§ 667, subd. (d), 1170.12, subd. (b).)  The trial court sentenced appellant to a term of 60 years to life in state prison, consisting of 25 years to life doubled for the strike on count 1, plus a consecutive 10-year term for the weapon-use allegation, and two years concurrent on count 2.

Appellant contends the trial court violated his state and federal constitutional rights by failing to suspend trial and institute competency proceedings in accordance with sections 1368 and 1369.  We disagree and affirm appellant's conviction.

Appellant further contends there was insufficient evidence that his prior conviction for violation of section 186.22, subdivision (a) qualifies as a strike under *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*) and *People v. Strike* (2020) 45 Cal.App.5th 143 (*Strike*).  The People agree that reversal and retrial of appellant's prior serious felony conviction is required. Accepting the parties' agreement, we reverse the trial court's true

---

[1] Undesignated statutory references are to the Penal Code.

finding on the prior strike allegation, vacate the sentence, and remand the matter for retrial of appellant's prior serious felony conviction.

## FACTUAL BACKGROUND

Kelvin Hillman repaired cars at his home in Los Angeles, and appellant frequently brought a white Acura to Hillman's house for repairs. The registered owner of the Acura, appellant's girlfriend Erica Childress, sometimes accompanied appellant to Hillman's house.

Surveillance videos from Hillman's neighborhood showed a white Acura on the street in front of Hillman's house around 2:25 in the afternoon on September 17, 2021. Cell tower data recorded appellant's cell phone in the area of Hillman's house at that time, and cell phone records indicated the last call Hillman received on his cell phone was from appellant's cell phone at 2:24 p.m. when the Acura was parked in front of Hillman's house. In the videos, Hillman can be seen walking from his house and crossing the street to the Acura. He then opens the passenger door of the Acura and appears to bend down as if to sit in the passenger seat. After a slight movement of the passenger door, the Acura drives away with the passenger door still open. No one can be seen in the front passenger seat, and the door closes with the acceleration of the car.

That afternoon, Hillman's niece, who lived nearby, heard a "pop" followed by people yelling in the street in front of her house. She went outside to find Hillman lying in a pool of blood in the street. He was bleeding profusely, unresponsive, and did not have a pulse. Hillman died as a result of a single gunshot fired to the neck from inches away. The bullet had traveled from the left side of the neck, left to right and slightly back to front, with an

exit wound on the right cheek. The medical examiner who performed the autopsy estimated that death occurred "rapidly," within seconds or minutes of the gunshot.

About 30 minutes after Hillman was shot, surveillance video showed appellant at a carwash getting the Acura washed. During the carwash, a substance resembling blood can be seen dripping down the passenger side door panel.

That night, around 7:15 p.m., appellant went to a T-Mobile store in Compton and changed his cell phone number from the one he had at the time of the murder to a new number. Surveillance video from the store showed appellant vigorously cleaning his hands, between his fingers, and each of his nails, as well as his face, neck, and the back of his head with the Clorox wipes the store used to wipe down equipment and counters. Appellant was not wearing a mask.

Police stopped appellant driving the white Acura on September 22, 2021. He was alone in the car. Appellant's DNA was on the driver's door handle, steering wheel, and gearshift. Gunshot residue was found throughout the car, a bullet hole was located in the passenger door panel, and the bullet was recovered from behind the door panel. Hillman's blood was found inside the Acura on the interior front passenger door panel. The Acura's carpeting appeared to have been vigorously scrubbed with rubbing alcohol, and several empty bottles of rubbing alcohol were found in the car along with a receipt for rubbing alcohol from Stater Bros. Appellant can be seen on the Stater Bros. surveillance video buying the rubbing alcohol on September 18, 2021. Finally, on September 20, 2021, appellant texted Childress that he had found a buyer for the Acura. In another text he asked her to buy him a ticket to Texas.

4

## DISCUSSION

### I. The Record Does Not Contain Substantial Evidence to Support a Reasonable Doubt as to Appellant's Competence to Stand Trial

#### A. *Relevant proceedings*

On May 27, 2022, approximately a week before trial was set to begin, defense counsel advised the trial court that he had learned appellant was not taking his medications. Based on the medication issue and conversations with appellant, defense counsel declared a doubt as to appellant's competence to stand trial. Defense counsel explained that appellant did not seem to understand the importance of the case or the ramifications of a guilty verdict. He could not understand a need for further investigation. "He started naming out names that had nothing to do with the case. . . . [And] he's not acting rashly [*sic*] to make a rational decision."

The trial court asked defense counsel if appellant had been able to assist with the defense in any way. Counsel responded that he had not. When the court asked if appellant was simply refusing to cooperate in his defense, counsel explained, "No, it [is] not because he's refusing, Your Honor. In his mind he thinks that the defense is complete. He can't understand that we actually need to do more for the defense. So his — his understanding of a defense is just the fact that [he] wasn't there and that's it. So he's not acting rashly [*sic*]." At this point, appellant interjected, "I didn't do it."

Observing that "there is a difference between someone just saying they didn't do it and not understanding the proceedings," the trial court asked counsel, "is he unable to communicate with you about his case?" Counsel replied, "He is, Your Honor. He is

5

unable to communicate with me about his case, Your Honor. He can't understand the process of the case, Your Honor. He can't understand — in his mind he's thinking after preliminary hearing that should be it. He — he just can't communicate and articulate a defense — helping me in any way with his defense."

The trial court then questioned appellant directly:

"The Court: Mr. Hill, do you understand why you're here today?

"The Defendant: Yes.

"The Court: Why?

"The Defendant: Trying to say that I did something that I didn't do.

"The Court: What are you charged with?

"The Defendant: I'm charged with murder."

The trial court asked appellant several times if he understood "that [his] lawyer needs [time] to prepare so that he can argue in front of a jury what [the] defense is." Appellant gave several nonresponsive answers before replying, "Yes, I understand that he needs time."

The trial court addressed defense counsel: "So I'm sorry, counsel, it doesn't sound like he doesn't understand what's happening. He's just being stubborn and doesn't want to let you prepare for his case, to his detriment." Counsel replied, "Again, the rationale, again, his understanding is basically because he's off his meds, Your Honor. [¶] . . . [¶] And at worst, Your Honor, if the court is not willing to declare a doubt, Your Honor, then I'm asking the court to at least order his medication be sent to him." When counsel admitted not knowing what type of "mental health meds" appellant needed, appellant explained, "It's for depression.

6

I — I had lost one of my family members and I was kind of depressed so I seen a psychiatrist."

The trial court stated that the fact that he was seeing a psychiatrist did not mean he did not understand the proceedings. The court agreed to sign the medical order to provide appellant with his medication, and explained to appellant that his attorney was not ready for trial and was asking to put the case over to allow him more time to prepare. Appellant responded, "It should be nothing to be ready about." The trial court then declared, "Okay. Sounds like he's being stubborn. That's on him. . . . You know when people go to trial not ready, that hurts their cases. It hurts you."

The case was then transferred to the Honorable Teresa P. Magno for trial. On June 7, 2022, Judge Magno confirmed with appellant his desire to proceed to trial without waiving time. No question of appellant's competence to stand trial came up before Judge Magno, and trial began on June 8, 2022.

## B. *Legal principles*

"The constitutional guarantee of due process forbids a court from trying or convicting a criminal defendant who is mentally incompetent to stand trial." (*People v. Rodas* (2018) 6 Cal.5th 219, 230 (*Rodas*); *People v. Bloom* (2022) 12 Cal.5th 1008, 1030 (*Bloom*); U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15.) Applying the constitutional standard, section 1367, subdivision (a) specifies that "[a] defendant is incompetent to stand trial when 'as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' " (*People v. Parker* (2022) 13 Cal.5th 1, 28 (*Parker*); *Rodas,* at p. 230; *People v. Mickel* (2016) 2

7

Cal.5th 181, 195 (*Mickel*) [a defendant who lacks " ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [or] a rational as well as factual understanding of the proceedings against him" ' " is incompetent to stand trial].)

During the pendency of a criminal action and prior to judgment, if "a doubt arises in the mind of the judge as to the mental competence of the defendant" (§ 1368, subd. (a)) and defense counsel concurs (*id.,* subd. (b)), the court must suspend criminal proceedings and commence competency proceedings. (*Rodas, supra,* 6 Cal.5th at p. 231.) This means the "accused has the right 'to a hearing on present sanity if he comes forward with substantial evidence that he is incapable, because of mental illness, of understanding the nature of the proceedings against him or of assisting in his defense.' " (*Ibid.*)

However, our Supreme Court has declared that " ' "[t]he decision whether to order a competency hearing rests within the trial court's discretion, and may be disturbed upon appeal 'only where a doubt as to [mental competence] may be said to appear as a matter of law or where there is an abuse of discretion.' . . . On review, our inquiry is focused not on the subjective opinion of the trial judge, but rather on whether there was substantial evidence raising a reasonable doubt concerning the defendant's competence to stand trial." ' " (*Bloom, supra,* 12 Cal.5th at p. 1030; *Mickel, supra,* 2 Cal.5th at pp. 201–202 ["Only where the court is presented with substantial evidence of mental incompetence is a defendant 'entitled to a section 1368 hearing as a matter of right' "].) As the high court has explained, in this context, substantial evidence of incompetence is " ' "evidence that raises a reasonable or bona fide doubt concerning the defendant's

competence to stand trial." ' " (*Parker, supra,* 13 Cal.5th at p. 28; *People v. Flinner* (2020) 10 Cal.5th 686, 760 [" ' "substantial evidence for this purpose is evidence 'that raises a reasonable or bona fide doubt' as to [the defendant's] competence" ' "].)

Evidence of incompetence may arise from several sources, including the defendant's demeanor or irrational behavior, as well as a prior history of mental illness. (*Bloom, supra,* 12 Cal.5th at p. 1033; *People v. Mai* (2013) 57 Cal.4th 986, 1033 (*Mai*).) But none of these factors is necessarily dispositive on the issue. (*Bloom,* at pp. 1022–1033.) Indeed, " '[t]o raise a doubt . . . [courts] require more than "mere bizarre actions" or statements, or even expert testimony that a defendant is psychopathic, homicidal, or a danger to him- or herself and others.' " (*Id.* at p. 1032; *Parker, supra,* 13 Cal.5th at p. 31 [" ' "[w]hen the trial court's declaration of a doubt is discretionary, it is clear that 'more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or . . . psychiatric testimony . . . [of past] diagnos[e]s *with little reference to defendant's ability to assist in his own defense*' " ' "].)

Moreover, "[a]n uncooperative defendant is not tantamount to an incompetent one." (*Parker, supra,* 13 Cal.5th at p. 29.) And while "[c]ounsel's assertion of a belief in a client's incompetence is entitled to some weight . . . unless the court itself has declared a doubt as to the defendant's competence, and has asked for counsel's opinion on the subject, counsel's assertion that his or her client is or may be incompetent does not, in the absence of substantial evidence to that effect, require the court to hold a competency hearing." (*Mai, supra,* 57 Cal.4th at p. 1033; see also *People v. Hines* (2020) 58 Cal.App.5th 583, 604 (*Hines*) ["defense counsel's declaration of doubt about the defendant's competence

9

supports holding an incompetency hearing but isn't sufficient to require one"].)

"Unless the record contains substantial evidence of present mental incompetence, we review a trial court's failure to initiate the competency inquiry only for abuse of discretion." (*People v. Johnson* (2018) 6 Cal.5th 541, 575; *Hines, supra,* 58 Cal.App.5th at p. 599 ["If the defendant has not presented substantial evidence of incompetence, the decision of whether to order a full competency hearing lies within the discretion of the trial court (and we review the decision for abuse of discretion)"].) " '[A]bsent a showing of "incompetence" that is "substantial" as a matter of law, the trial judge's decision not to order a competency hearing is entitled to great deference, because the trial court is in the best position to observe the defendant during trial.' " (*Parker, supra,* 13 Cal.5th at p. 29, quoting *Mai, supra,* 57 Cal.4th at p. 1033.) And an appellate court will find an abuse of discretion only when the trial court has " ' "exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice." ' " (*People v. Schultz* (2020) 10 Cal.5th 623, 668.)

### C. *Analysis*

While the record in this case shows appellant's refusal to waive time to allow defense counsel to conduct further investigation, there appears no evidence to support the claim that appellant was unable to understand the nature of the criminal proceedings against him or to assist counsel in a rational manner in the conduct of his defense.

Defense counsel's assertions that appellant was unable to communicate about his case or assist in the defense and was not acting rationally find no support in the record. No evidence

10

regarding appellant's mental condition, such as a mental evaluation or medical report from a treating physician or mental health expert, was offered.  In the absence of "expert opinion from a qualified and informed mental health expert, stating under oath and with particularity that the defendant is incompetent, or . . . some other substantial showing of incompetence that supplements and supports [defense] counsel's own opinion" of incompetence, the trial court does not "have a nondiscretionary obligation to suspend proceedings and hold a competency trial." (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465; cf. *People v. Wycoff* (2021) 12 Cal.5th 58, 87 (*Wycoff*) [professional opinion of mental health expert presented in a formal report addressed to the court stating detailed grounds for the conclusion that defendant was incompetent to stand trial "constitute[d] substantial evidence as a matter of law of defendant's mental incompetence"]; *People v. Ghobrial* (2018) 5 Cal.5th 250, 270 [substantial evidence of incompetence is shown when " 'a qualified mental health expert who has examined the defendant " 'states under oath with particularity that in his professional opinion the accused is, because of mental illness, incapable of understanding the purpose or nature of the criminal proceedings being taken against him or is incapable of assisting in his defense or cooperating with counsel' " ' "].)

Defense counsel's representation to the court that appellant was "off his meds" did not constitute substantial evidence of mental incompetence sufficient to trigger the trial court's duty to suspend proceedings and initiate competency proceedings.  (See *Bloom, supra,* 12 Cal.5th at p. 1033 [trial court had no duty to make inquiry into defendant's psychiatric medication absent any evidence that his competence depended on compliance with a

medication regimen].)  When defense counsel admitted to being unaware of what type of medication appellant had been taking or what it was for, appellant explained that medication had been prescribed to him for depression after the loss of a family member.  Under these circumstances, the trial court properly concluded that the fact that appellant had received psychiatric care for depression did not amount to substantial evidence of incompetence to stand trial.

We also reject appellant's argument—made for the first time on appeal—that the trial court had a duty to declare a doubt and commence competency proceedings based on a prior finding of incompetence and commitment of appellant under section 1370 from July 19 to September 28, 2000.

Even if the trial court had been made aware that appellant had been found incompetent at some time in the past, such a remote, unexplained period of confinement to a mental hospital would have been insufficient to compel the trial court to declare a doubt as to appellant's *current* ability to understand the proceedings and assist in his defense.  (See *Bloom, supra,* 12 Cal.5th at p. 1033 ["Although the trial court was aware that [defendant] had a history of mental illness," this fact, without more, did not give "rise to a duty to suspend proceedings and conduct a formal evaluation of [defendant's] ability to understand the proceedings against him and assist rationally in his own defense"]; *Mickel, supra,* 2 Cal.5th at p. 202 ["even expert testimony that a defendant is psychopathic, homicidal, or a danger to him- or herself and others" may be insufficient to raise a doubt regarding competency if the mental illness does not affect the defendant's understanding of the criminal proceedings or hinder the ability to consult with counsel and assist in defense];

12

*People v. Ramos* (2004) 34 Cal.4th 494, 508 [defendant must present more than "a preexisting psychiatric condition that has little bearing on the question of whether the defendant can assist his defense counsel"].)

Appellant argues that *Wycoff, supra,* 12 Cal.5th 58 is analogous to the instant case and mandates reversal here. We disagree. To the contrary, *Wycoff* demonstrates precisely why the trial court here did not err in failing to proceed in accordance with sections 1368 and 1369.

In *Wycoff*, our Supreme Court held that the detailed and uncontradicted report of an experienced mental health expert who had examined the defendant constituted—as a matter of law—substantial evidence of defendant's incompetence to stand trial, thus requiring competency proceedings in accordance with sections 1368 and 1369. (*Wycoff, supra,* 12 Cal.5th at p. 84.) The court found that Dr. Good, an expert in forensic psychology chosen by the trial court, had given a credible and persuasive opinion regarding defendant's mental incompetence, "supported by three interviews with defendant, a thorough psychiatric history, appropriate psychological testing, and detailed reasoning in which he made clear the factual basis for his conclusions." (*Id.* at p. 86.) The court found the thoroughness of the expert's analysis to be of particular significance: "Dr. Good described his evaluation procedures in detail, summarized defendant's personal background, evaluated defendant's mental status as of the time of the examination, related in detail the factual basis for his diagnosis, and set forth his diagnosis in cautious terms." (*Ibid.*)

Because "Dr. Good's opinion constitute[d] substantial evidence as a matter of law of defendant's mental incompetence,"

13

the court held that the trial court had erred in rejecting the expert's report and relying instead on its own experience interacting with the defendant. (*Wycoff, supra,* 12 Cal.5th at pp. 87, 88.)

The instant case stands in stark contrast to the circumstances in *Wycoff*. Here, the trial court was presented with no diagnosis of mental illness, no psychological testing, no expert evaluation, no expert report, and no expert opinion regarding appellant's mental competence. In short, there was no evidence before the trial court in this case to suggest that appellant was incapable of consulting with counsel and assisting in his defense due to any kind of mental illness. Rather, the evidence suggested at most that appellant was simply unwilling to cooperate with defense counsel's request for a delay of trial for further investigation and preparation because he believed that defense counsel had already had adequate time to prepare. Appellant's stubborn refusal to accept his counsel's advice was not substantial evidence of mental incompetence, and was insufficient to require the trial court to institute a section 1369 competency proceeding. (See *Mai, supra,* 57 Cal.4th at p. 1034 [a defendant's refusal to cooperate with counsel does not by itself constitute substantial evidence of incompetence].)

## II. Remand is Required to Determine Whether Appellant's Prior Conviction Under Section 186.22 Qualifies as a Strike

The parties agree that because there was insufficient evidence presented at the bifurcated proceeding that appellant's prior conviction for gang participation (§ 186.22, subdivision (a)) qualifies as a "strike" under the "Three Strikes" law, the true finding on appellant's prior conviction allegation must be

14

reversed, the sentence vacated, and the matter remanded for retrial of the prior strike conviction. (See *Strike, supra,* 45 Cal.App.5th at pp. 146–147, 154; see also *People v. Barragan* (2004) 32 Cal.4th 236, 239, 241 [reversal of a true finding on a prior conviction allegation does not prevent retrial of the enhancement].)

In 2012, a majority of the California Supreme Court held that section 186.22, subdivision (a) is violated only when a gang member acts with another active member of the same gang in committing a felony offense. (*Rodriguez, supra,* 55 Cal.4th at p. 1128 (plur. opn. of Corrigan, J.); *id.* at p. 1139 (conc. opn. of Baxter, J.).) The court in *Strike* held that this clarification of the elements of section 186.22, subdivision (a) rendered the mere fact of the "pre-*Rodriguez* conviction [for gang participation] inconclusive on its face as to whether it qualified as a strike." (*Strike, supra,* 45 Cal.App.5th at p. 150.) Thus, in order to prove the defendant's 2007 conviction for violation of section 186.22, subdivision (a) qualified as a prior strike conviction in the defendant's 2017 case, *Strike* held the prosecution was required to demonstrate that all the elements of the section 186.22, subdivision (a) offense as interpreted by *Rodriguez* had been established—"including that [the defendant] committed a felony offense with another member of his gang." (*Ibid.*)

Here during the trial on appellant's priors, the prosecution presented a certified prison packet from the California Department of Corrections and Rehabilitation and a certified "RAP" sheet to prove appellant's prior strike conviction. While these documents establish appellant's 2001 conviction for a violation of section 186.22, subdivision (a), none reveals whether

15

appellant committed the gang participation offense with one or more members of his gang, as required by *Rodriguez*.

As respondent concedes, the appropriate remedy in this instance is to reverse the trial court's true finding that appellant's 2001 section 186.22, subdivision (a) conviction qualifies as a strike, vacate the sentence, and remand for a new trial on the enhancement based on the record of the prior conviction. (*Strike, supra,* 45 Cal.App.5th at p. 154.)

## DISPOSITION

The trial court's true finding on appellant's prior strike conviction is reversed and appellant's sentence is vacated. The matter is remanded for retrial of the prior conviction allegation and resentencing. Following retrial, the trial court is directed to resentence appellant and forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

16